TENA JONES ET AL. *v.* HARRIET GURLIE ET AL.

TRANSFER.  *Failure to sign.  Acknowledgment.*
   The mere acknowledgment by a party that she signed a written transfer which was not in fact signed is not a substitute for signing or proof of it.

APPEAL from the Chancery Court of Jackson County.
HON. GEORGE WOOD, Chancellor.

On the 24th day of January, 1878, Harriet Gurlie gave Freeman Jones, Sr., a bond for title to a certain tract of land in Jackson County, title to be conveyed to said Jones upon the payment by him of forty dollars, a balance due on the purchase-money. The property was a homestead. On the 24th day of January, Jones was arrested on the charge of grand larceny, and in order to secure one H. H. Cudabac, who went bail for him, Jones transferred to Cudabac the said bond for title. For some cause, on the 25th day of

May, 1878, Cudabac delivered Jones up to the sheriff, and reconveyed to Jones the bond for title. On the same day one Willis Fransberry went bail for Jones, and as security for so doing took a transfer of the bond for title aforesaid. The transfer to Fransberry purported to have been made by Freeman Jones and Tena Jones, his wife. It was signed by Freeman Jones, but on the day it was made Tena Jones was not present, and the attorney who wrote the transfer left a space for Tena Jones' signature, thus, Tena Her Jones. On the following day Tena Jones appeared before mark the clerk and acknowledged in due form that she had signed, sealed, etc., but did not make her mark or sign the transfer in any way, nor adopt the act of the attorney as her signature.

On the 29th day of May, 1879, a judgment *nisi* was entered in the Circuit Court of Jackson County against Freeman Jones and his surety, Willis Fransberry, but this judgment was never made final. On the 26th day of January, 1880, Freeman Jones died, and at the succeeding May term of the court the prosecution against him was abated. Fransberry suffered no loss by reason of his going bail for Jones.

In 1879 Harriet Gurlie, in consideration of the sum of seventy-five dollars, made a deed to the property above mentioned to one J. B. Payne. In May, 1880, Payne and wife conveyed the property to Adam Blumer, and in August, 1880, Willis Fransberry transferred to Payne the bond for title to the property which had been transferred to him by Freeman Jones under the circumstances above set forth.

Upon the above state of case Tena Jones, the widow of Freeman Jones, and his children, one of whom was a minor, filed their bill in the chancery court against Harriet Gurlie, J. B. Payne, and Willis Fransberry, alleging that the transfers from Harriet Gurlie and Fransberry to Payne, and from Payne to Blumer, were in fraud of and for the purpose of defeating the rights of the complainants, and that all the parties had full knowledge of complainants' rights; that complainant, Tena Jones, had offered to pay to Payne the amount due on the purchase-money, but that he refused to take it,

and that they tender with their bill the forty dollars due, and ask for a surrender of the defendants' claim of title to the property and for a production of the original bond for title from Gurlie to Jones, which they allege is in possession of the defendants, and for a decree for specific performance against Harriet Gurlie.

Upon final hearing the bill was dismissed and complainants appeal.

*L. Brame,* for the appellants.

1. That the bond for title was assigned to Fransberry as a mere security is too plain for argument. In his answer he denies this, but his own testimony and that of all the other witnesses who know anything of the facts, including several of the defendants' witnesses, shows that the statements of his answer are false. The defendants do not deny the allegation that the transfer was conditional. *Mead* v. *Day,* 54 Miss. 58.

2. Payne took the assignment of the title bond with full notice of the conditions upon which Fransberry held it. Besides, the complainant, Tena Jones, and her children, were in possession of the property, and this afforded constructive notice of their rights. *Jones* v. *Loggins,* 37 Miss. 546.

3. It is difficult to perceive why the bill was dismissed without granting to complainants any relief whatever. Conceding that Blumer was an innocent purchaser, and that he paid the entire purchase-money without notice actual or constructive, certainly complainants were entitled to a decree against Payne as a trustee for the value of the property. Fransberry held the bond for title in trust. He wrongfully transferred it to Payne, who knew of the trust, and therefore became trustee himself. It is a general principle that one who receives property in violation of a trust becomes himself a trustee. 1 Perry on Trusts, § 217, and authorities there cited. In *Cummings* v. *Oglesby,* 50 Miss. 153. This decision is approved in *Murphree* v. *Countis,* 58 Miss. 712; see also *Anderson* v. *Spencer,* 51 Miss. 869. The principle of these decisions is controlling here.

*Ben Lane Posey,* for the appellees, argued the case orally and in writing.

1. The bill, in order to show equities in the complainants, must show that the transfer of the title bond was a mortgage and a mortgage of the homestead, and was not executed by Tena Jones, the wife of Freeman Jones. A husband may make an absolute conveyance of the homestead without the wife's assent. The statute applies only to incumbrances on the homestead, as requiring the wife's assent. A sale is not an incumbrance.

2. But the evidence fails to show, as the bill alleges, that Tena Jones, the wife, did not join in the conveyance or transfer of the title bond. It rests alone on her testimony, and even this is guarded in language, that she did not sign the transfer of the bond. She does not swear she did not acknowledge the execution of the instrument. But the certificate of the clerk contradicts her and his deposition contradicts her.

3. Again, can a homestead rest upon a mere title bond—a *chose in action?* Can it rest upon a mere equitable title? And upon the facts of this case was there a perfect equity to enforce the specific performance?

*Seal & Bloomfield,* on the same side.

*L. Brame,* for the appellants, in reply.

This case arose while the Act of 1873 was in force, and it was not until the Code of 1880 went into effect that the husband, without the concurrence of his wife, could *sell* the homestead. Any kind of title or estate will support the homestead right. Thompson on Hom. and Ex., §§ 170–171; *McGrath* v. *Sinclair,* 55 Miss. 89; *King* v. *Sturges,* 56 Miss. 606.

*L. Brame* also made an oral argument.

CAMPBELL, C. J., delivered the opinion of the court.

The case made by the bill is that Freeman Jones transferred the bond for title to his homestead to Willis Fransberry to secure him against loss by reason of his becoming bail for his appearance at court to answer an indictment; that Fransberry transferred the bond for title to Payne, who obtained a deed from the obligor in the bond, and afterward sold and conveyed the land described in the bond to Blumer; that the transfer of the bond to Fransberry

was as indemnity against loss, and that no loss had been sustained or could be by Fransberry on account of his having become bail ; that Jones had died, and that his homestead right had descended to his widow and children who are entitled to have a conveyance of the legal title of the land by Blumer, who purchased with notice of the state of the title from Payne, who obtained from Fransberry the bond for title with full knowledge of the way in which he held it, and procured title from Mrs. Gurlie with intent to defeat the rights of complainants. The bill offers to pay what Payne paid to obtain title from Mrs. Gurlie. While the bill states that Payne obtained from Mrs. Gurlie a deed to the land, it prays a production of the deed by Payne. One of the complainants sues as an infant.

The case made by the evidence is that the transfer of his homestead by Jones to Fransberry was not joined in by his wife, and it was therefore invalid. It appears that she was expected to sign the transfer, and a place was left for her signature, and she subsequently acknowledged before the clerk that she had signed, sealed, and delivered it, but it is manifest that she did not in fact sign the transfer, and her mere acknowledgment that she had signed it is not a substitute for signing or proof of it. If she had been present when Mr. Wood wrote her name, and he had written it as her signature, or if she had, with her attention distinctly called to it, adopted the signature of her name as written it would have been sufficient, but the facts are that she was not present; that Mr. Wood did not undertake to sign her name for her but wrote it in

the usual manner thus : " Tena $\overset{\text{Her}}{\underset{\text{mark}}{}}$ Jones," leaving the signing to be done by her making some sort of mark in the blank space left for it, and this making her mark was to be signing by her, until which it was not considered signed by her. The evidence shows that on the next day she came before the clerk who had on the day before written and signed the certificate of acknowledgment and acknowledged the transfer, but it is not suggested that she put her mark on the paper, or that she saw it, or that she expressly adopted the act of Mr. Wood as her signature of the transfer.

It is therefore obvious that, on the case made by the evidence, the transfer of the bond as a conveyance of the homestead was invalid and conferred no right on Fransberry, and that none could be obtained from him.

The answer of Payne shows that the "so-called" deed of Mrs. Gurlie is a mere receipt for purchase-money, and that the legal title is in her, and, therefore, Payne got and conveyed to Blumer only an equity, and that Blumer, although innocent in the transaction, holds subject to prior equities.

We entertain no doubt that the transfer of the bond for title by Jones was as security to Fransberry against loss, and that Payne had full notice of the terms on which the bond was held by Fransberry, and that Payne became a trustee by the assignment of the bond to him, and if he had succeeded in placing the title in Blumer so as to be beyond the reach of the claim of the complainants, they would have been entitled to a decree against him personally for the amount of their loss sustained by his act.

As the rights of an infant complainant are involved, the Chancellor should have ordered the bill amended so as to present the case made by the evidence, and we now render the decree which should have been made below.

*Decree reversed, and leave given to complainants to amend their bill so as to question the validity of the transfer of the bond for title to Fransberry, and so as to show that the legal title remains in Mrs. Gurlie, and that only an equity was acquired by Blumer, and otherwise as complainants may be advised, and cause remanded to be proceeded in as herein indicated.*